UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VANCE SOLMAN, SR.,  :
    Plaintiff,  :
       :        PRISONER
v.  :        CASE NO. 3:10-cv-729 (SRU)
       :
RICHARD MANZI, et al.,  :
    Defendants.  :

## RULING AND ORDER

On July 21, 2010, the court dismissed this action pursuant to 28 U.S.C. § 1915A. Plaintiff Vance Solman, Sr., now seeks reconsideration of that ruling and appointment of counsel. For the reasons that follow, Solman's motion to reopen is granted in part. His motion for appointment of counsel is denied without prejudice.

I.    Motion for Reconsideration

Reconsideration will be granted only if the moving party can identify controlling decisions or data that the court overlooked and that would reasonably be expected to alter the court's decision. *See Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration may not be used to relitigate an issue the court already has decided. *See SPGGC, Inc. v. Blumenthal*, 408 F. Supp. 2d 87, 91 (D. Conn. 2006), *aff'd in part and vacated in part on other grounds*, 505 F.3d 183 (2d Cir. 2007). A party cannot seek reconsideration to "plug gaps in an original argument or to argue in the alternative once a decision has been made." *Horsehead Resource Dev. Co., Inc. v. B.U.S. Envtl. Serv., Inc.*, 928 F. Supp. 287, 289 (S.D.N.Y. 1996) (internal quotation marks and citations omitted).

Solman alleged that defendants Manzi and Riccio falsely accused him of disciplinary

infractions. The court dismissed those claims because Solman has no constitutionally protected right against false accusations and did not satisfy either of the two exceptions to that general rule. Solman now argues that he meets an exception.

An inmate may state a cognizable claim for false accusations made in retaliation for an inmate exercising a constitutionally protected right. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). In the original complaint, Solman states that after defendant Manzi issued the second disciplinary report, Solman filed a "formal complaint." A few weeks later, defendant Manzi issued a third disciplinary report. Solman was exonerated of all three charges. These incidents occurred from June 2007 to October 2007. Solman referenced his state habeas petition in reference to the 2009 disciplinary report he received from defendant Riccio. The court considered the state habeas in evaluating a possible retaliation claim, but determined that the reference to a state habeas action was insufficient to state a claim for retaliation. *See* Doc. #9 at 3-4.

Solman states that the actions by defendants Manzi and Riccio resulted from his being found not guilty of the disciplinary charges. Solman also argues that the court made a factual error by not permitting a retaliation claim based on Solman's grievance against defendant Manzi. He contends that the continued issuance of disciplinary reports by defendants Manzi and Riccio after the grievance was filed and after he was found not guilty on earlier disciplinary charges demonstrates retaliatory conduct.

Solman must allege three elements to state a claim for retaliation under 42 U.S.C. § 1983: (1) he has a right protected under the First Amendment; (2) the defendant's actions were motivated by or substantially caused by Solman's exercise of that First Amendment right; and (3) the defendant's actions effectively chilled Solman's exercise of his rights. *See Connell v.*

2

*Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998). Solman did not file his complaint about defendant Manzi until after the first two disciplinary reports. Thus, these reports could not have been issued in retaliation for the complaint. The third disciplinary report was issued about two weeks after the complaint. Temporal proximity of an allegedly retaliatory disciplinary report to an inmate's grievance or complaint can be circumstantial evidence of retaliation. *See Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002). The court will grant Solman's motion for reconsideration with respect to the claim that defendant Manzi issued the October 2007 disciplinary report in retaliation for Solman's complaint.

Solman has not identified any First Amendment right asserted prior to the first or second disciplinary reports. The fourth disciplinary report was issued by defendant Riccio over two years after Solman's complaint. Although Solman alleges that defendant Manzi was present, there is no indication that the report was in retaliation for the complaint against defendant Manzi two years earlier. Thus, the complaint fails to state a retaliation claim based on the November 2009 disciplinary report.

Solman also argues that the mere fact that he was sent to restrictive housing as a result of the alleged actions constitutes atypical and significant hardship as required to state a claim for denial of due process against the remaining defendants. To state a claim for violation of procedural due process, Solman must show that he had a protected liberty interest and, if he had such an interest, that he was deprived of that interest without being afforded due process of law. *See Sandin v. Conner,* 515 U.S. 472 (1995). He has a protected liberty interest only if the state created a liberty interest through a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship. *See Tellier v. Fields*, 280 F.3d 69, 81 (2d Cir. 2000).

The court need not consider whether Solman has a protected liberty interest because, even if an interest exists, Solman has not suffered an atypical and significant hardship. Under *Sandin*, the court must compare the conditions described by the plaintiff with the conditions an inmate generally can expect from prison life to determine whether the conditions constitute an atypical and significant hardship. Solman neither alleges nor provides any evidence to provide a basis for such a comparison. However, courts considering harsher sanctions have held that those sanctions do not rise to the level of an atypical and significant hardship.

Inmates should reasonably anticipate confinement in segregation. *See Russell v. Scully*, 15 F.3d 219, 221 (2d Cir. 1993); *see also Frazier v. Coughlin*, 81 F.3d 313, 317-18 (2d Cir. 1996) (holding that 120-day confinement in segregation followed by 30-day loss of recreation, commissary privileges, packages and telephone use did not state a cognizable claim for denial of due process). Solman alleges that he spent fourteen days in restrictive housing in 2007 and ten days there in 2009. The court concludes that Solman's sanctions, significantly less that the 120 days in segregation imposed as a sanction in *Frazier*, were not an atypical and significant hardship and do not give rise to a liberty interest under *Sandin*. Thus, the determination that Solman fails to state a cognizable due process claim will not be reconsidered.

II.     Motion for Appointment of Counsel

Solman seeks appointment of *pro bono* counsel in this action pursuant to 28 U.S.C. § 1915. The Second Circuit repeatedly has cautioned the district courts against the routine appointment of counsel. *See, e.g.*, *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997); *Cooper v. A. Sargenti Co.*, 877 F. 2d 170, 172 (2d Cir. 1989). The Second Circuit has made clear that before an appointment is even considered, the indigent person must demonstrate that he is unable to obtain counsel. *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986), *cert.*

*denied*, 502 U.S. 996 (1991).

Solman states in his motion that, in July 2010, he contacted four law firms seeking representation. Only one had responded to his letter at the time he filed this motion in August 2010. This is insufficient time to conclude that Solman will not receive responses to his other letters. In addition, Solman also does not indicate that he contacted Inmates' Legal Assistance Program, the organization established to provide legal assistance to Connecticut inmates. Even if the other law firms decline representation, without his contacting Inmates' Legal Assistance Program, the court cannot conclude that Solman is unable to obtain legal assistance on his own.

Further, when deciding whether to appoint counsel, the district court must "determine whether the indigent's position seems likely to be of substance." *Id.* In *Cooper v. Sargenti*, the Second Circuit cautioned the district courts against the "routine appointment of counsel" and reiterated the importance of requiring an indigent to "pass the test of likely merit." 877 F.2d at 173-74. The Court explained that "even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." *Id.* at 171. The record consists only of the retaliation claim against defendant Manzi and any supplemental state law claims. Without any response from the defendant, this court cannot determine whether Solman's claims possess likely merit.

Accordingly, Solman's motion for appointment of counsel is denied without prejudice to renewal at a later stage of litigation. Any renewed motion shall further document Solman's efforts to obtain *pro bono* counsel on his own, including his efforts to obtain legal assistance from Inmates' Legal Assistance Program.

III. <u>Conclusion and Orders</u>

Solman's motion for reconsideration [**Doc. #12**] is **GRANTED** to the extent that the case

will be reopened and proceed on the retaliation claim against defendant Manzi regarding the October 2007 disciplinary report and any supplemental state law claims; the motion for reconsideration is **DENIED** in all other respects. As Solman is not required to include detailed factual allegations in his complaint, thus, his request to file a second amended complaint is **DENIED**.

The Clerk is directed to verify the current work addresses and mail waiver of service of process request packets to defendant Manzi in his individual capacity within **fourteen (14)** days of this Order, and report to the court on the status of those waiver requests on the **thirty-fifth (35)** day after mailing. If defendant Manzi fails to return the waiver request, the Pro Se Prisoner Litigation Office shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

The Clerk shall send a courtesy copy of the Complaint, the Initial Review Order dated July 21, 2010, and this Ruling and Order to the Connecticut Attorney General and Department of Correction Legal Affairs Unit. The Clerk also shall send written notice to the plaintiff of the status of this action, along with a copy of this Order.

Defendant Manzi shall file his response to the complaint, either an answer or motion to dismiss, within **seventy (70)** days from the date of this order. If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. He also may include any and all additional defenses permitted by the Federal Rules.

Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need

6

not be filed with the court.

All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order. Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

Solman's motion for appointment of counsel [**Doc. #13**] is **DENIED** without prejudice to renewal at a later stage of litigation.

**SO ORDERED** at Bridgeport, Connecticut this 17th day of September 2010.

      /s/ Stefan R. Underhill
      Stefan R. Underhill
      United States District Judge