UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VANCE SOLMAN, SR., : | |
|     Plaintiff, : | |
| : | |
| v. : | Case No. 3:10-cv-729 (SRU) |
| : | |
| RICHARD MANZI, et al., : | |
|     Defendants. : | |

RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [Docs. ##73, 77]

The plaintiff, Vance Solman, Sr., commenced this civil rights action *pro se*. The remaining claims in this action are a federal law claim for retaliation against Richard Manzi and associated state law claims.[1] Pending are cross-motions for summary judgment. For the reasons that follow, both the plaintiff's and defendant's motions are denied.

I.    Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the

---

[1] In the complaint, Solman asserted claims against Richard Manzi, John Riccio, Robert Jinks, Jason Hogan and C.C. Anderson. On July 21, 2010, the court dismissed the complaint. *See* Doc. #9. On September 17, 2010, the court granted in part Solman's motion for reconsideration and ordered that the case would be reopened and proceed only on the federal retaliation claim against Manzi regarding issuance of a disciplinary report in October 2007 and any associated state law claims. *See* Doc. #15.

light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of

his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

II.  Facts[2]

At all times relevant to the incidents underlying this action, Vance Solman was confined at the Cheshire Correctional Institution ("Cheshire") in Cheshire, Connecticut. Richard Manzi was a correctional officer at Cheshire.

In June of 2007, Manzi issued Solman a disciplinary ticket for possessing contraband: Solman worked in a shop in the prison, and Manzi caught Solman using a sharpened rivet on the job. Solman was arrested and criminally charged with possession of a weapon. As a result of the charges, Solman lost his job. But after an investigation, a Cheshire official, Lieutenant Gregory Harpin, found that Solman had permission to use the rivet, and recommended that both the internal charges and court case be dismissed. Solman then returned to his position at the shop.

On September 21, 2007, Manzi issued Solman a second disciplinary ticket, this time for running in the recreation yard: Solman was on his way to work in the shop when he stopped to

---

[2]The facts are taken from Solman's Local Rule 56(a)1 Statement [Doc. #81], Manzi's Local Rule 56(a)1 and 56(a)2 Statements [Docs. ##77-4, 82] and the exhibits submitted by both parties.

speak with another official about using the phone to call his lawyer. After his brief exchange with the guard, Solman had fallen behind the rest of his co-workers and so he sprinted to catch-up with them. Manzi witnessed this run and ordered Solman to stop. Solman did not, and Manzi issued Solman a ticket for running in the yard.

Solman felt the ticket was unjustified, and suspected that Manzi harbored resentment left over from the June incident. On September 24, 2007, Solman sent Deputy Warden Adgers a letter and formal grievance describing the two instances in which Manzi ticketed Solman. Solman did not receive a written response to his letter.  Instead, Deputy Warden Adgers had an informal conversation with Solman and told the inmate not to antagonize Manzi.

Eight days later, Solman had a final run-in with Manzi. Solman was working in the shop. A supervisor allowed inmates to purchase items at the commissary and store them at the shop, but insisted that workers give all of their requests to one person who would then buy everyone's items. On October 2nd, Solman, along with several other inmates, handed a fellow inmate lists of items they wanted from the commissary.

This practice violated prison rules, which state that prisoners cannot buy items at the commissary for one another. Manzi witnessed the inmate walking over to the commissary with a handful of lists, and asked to see them. Manzi pulled out only Solman's list from the pile and returned to the shop. The officer then issued Solman a third disciplinary ticket for violating prison rules. Though the ticket was eventually dismissed, Solman still lost his job in the shop as a result.

Manzi denies that he knew about the September grievance complaint when he disciplined Solman in October.   Manzi did not mention the letter of complaint to Solman at any time.

4

III.     Discussion

Prison officials may not retaliate against inmates for exercising their constitutional rights. Solman claims that Manzi issued the October 2, 2007 disciplinary ticket in retaliation for Solman's September 24, 2007 complaint to Deputy Warden Adgers. Both parties move for summary judgment

To state a retaliation claim, Solman must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Garcia v. S.U.N.Y. Health Sciences Center*, 280 F.3d 98, 106-07 (2d Cir. 2001) (citing *Dawes v. Walker*, 239 F.3d 489. 492 (2d Cir. 2001), and *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc )).  Because claims of retaliation are easily fabricated, the courts examine such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 2003).  To support a claim of retaliation, the allegedly retaliatory conduct must be sufficiently severe to deter a similarly situated inmate of ordinary resolve from exercising his constitutional rights.  It is not necessary that the plaintiff himself be deterred. *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).

Solman easily meets the first two prongs of the *Garcia* test: he engaged in protected activity, the filing of a letter complaining about the conduct of a correctional officer, and suffered an adverse action, the disciplinary report. *See Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) (filing grievance is constitutionally protected activity). Given the dramatic consequences of receiving a disciplinary ticket, loss of a coveted job in the metalworks shop, Solman has also

5

shown that the adverse action would have deterred an inmate of ordinary resolve from exercising his constitutional rights.  At issue here is whether he has provided sufficient evidence to establish the third prong. A short time lag between an inmate's grievance and an alleged reprisal can be circumstantial evidence of a causal link between protected speech and an adverse action.  *See Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002).  "To establish causality by temporal proximity alone, the proximity between the protected activity and the adverse employment action must be very close."  *Grant, Jr. v. Connecticut Dep't of Corr.*, 2010 WL 2584763, at *6 (D. Conn. June 22, 2010) (citing *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). Here, Manzi issued the ticket only eight days after Solman filed his letter. Coupled with the fact that Manzi was both the target of Solman's grievance and the perpetrator of the alleged retaliation, this short delay is enough to establish a causal connection between the two events. *See Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002) (noting that a short time lag coupled with defendant's direct involvement is sufficient to give rise to inference of retaliation), *abrogated on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002).

Since Solman has established a prima facie showing of retaliation, the burden shifts to Manzi to  present evidence that he would have taken action against Solman "even in the absence of the protected conduct." *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  If Manzi acted for both proper and improper reasons, the retaliation claim will fail if the action would have been taken based on the proper reasons alone. *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Here, Solman and Manzi provide conflicting accounts of the October 2nd incident. Solman concedes that he knew that prison rules barred inmates from asking someone else to

purchase commissary items for them. *Pl.'s Local Rule 56(a)1 Statement, Doc. #81, at 18-20*. But according to Solman, Manzi enforced this rule against him and not others: A supervisor instructed all the workers to give their commissary requests to one person. When Manzi stopped the workers' emissary, Manzi found lists of requests from several different people. Solman alleges that Manzi only pulled Solman's ticket from the pile, and only sanctioned Solman for disobeying a rule. *See Solman Depo. At 12:14-21*. Manzi disputes this version of events, and also counters that since Solman broke a rule, Manzi had a right to discipline him, no matter his decision regarding other inmates.

    The parties' divergent stories raise a genuine issue of material fact that can only be resolved at trial. If the jury believes Solman, then Manzi selectively enforced prison rules, and his targeted discipline casts doubt on his assertion that he would have ticketed Solman even absent any retaliatory motive. Indeed, Solman has presented evidence that, but for his exercise of a protected activity, Manzi would have stayed his hand, namely, a number of similarly situated colleagues who got off scot free for identical behavior. If the jury believes Manzi, then Manzi thought that Solman alone flouted prison rules, and only wanted to punish Solman for his infraction, not for his prior complaints.

    Manzi's allegedly selective enforcement distinguishes this case from others in which a prisoner's guilt rebuts a prima facie case of retaliation. In general, a defendant can defeat a plaintiff's initial showing of a retaliatory motive if "the plaintiff 'committed . . . the prohibited conduct charged in the misbehavior report.'" *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir. 2002) (citations omitted). In *Lowrance v. Achtyl*, the Second Circuit explained that this default rule makes sense in order to protect officers' discretion, or, as the court put it, presumptions are

necessary "in the context of prison administration where we have been cautioned to recognize that 'prison officials have broad administrative and discretionary authority over the institutions they manage.'" 20 F.3d 529, 535 (2d Cir. 1994) (citations omitted).

But this rule makes little sense when a plaintiff provides evidence that retaliation was the but for cause of an official's action, rather than just one reason among many. Here, Solman has provided evidence that Manzi used Solman's technical violation of a rule as an excuse to get back at Solman for filing a complaint: Manzi only sanctioned Solman for giving his colleague a commissary wish list even though others had as well. Although officers generally choose to punish the guilty because they are guilty, there are exceptional situations in which officers use an inmate's misconduct as an excuse to exact a different sort of vengeance. Solman has provided sufficient evidence that Manzi's conduct falls into the latter camp.

Because the parties' factual disputes give rise to an issue of material fact, both Manzi's and Solman's motions for summary judgment are denied.[3]

IV.     Conclusion

Solman's Motion for Summary Judgment [**Doc. #73**] is **DENIED** and Manzi's Motion for Summary Judgment [**Doc. #77**] is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this ___ day of March, 2012.

---

[3] Defendant did not raise a qualified immunity defense in his summary judgment papers. Even if he had, a finding of immunity would be inappropriate here. Both the question liability and the question of immunity turn on factual disputes. Solman intends to present evidence at trial that proves Manzi selectively enforced a rule in order to deter Solman from filing future grievances. If Solman can establish those facts, Manzi would have violated a clearly established rule of constitutional law and would not be entitled to immunity. If Solman cannot marshal enough evidence to convince a jury, then Manzi will be both innocent of the accused violation, and immune from any damages for it.

/s/ Stefan Underhill
Stefan R. Underhill
United States District Judge